478 A.2d 822

COMMONWEALTH of Pennsylvania

v.

Daniel GRAY, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 13, 1983.

Filed June 1, 1984.

Richard Utman, Jr., Assistant Public Defender, Doylestown, for appellant.

Stephen B. Harris, First Assistant District Attorney, Doylestown, for Commonwealth, appellee.

Before SPAETH, P.J., and CIRILLO and JOHNSON, JJ.

JOHNSON, Judge:

Appellant was convicted by a jury of burglary,[1] criminal trespass [2] and conspiracy [3] on February 24, 1982 and sentenced under the Youthful Offender Act [4] to an indeterminate term, not to exceed 30 months, on both the burglary and conspiracy counts, as well as to pay $100 in restitution. This appeal followed.

The record indicates that on November 5, 1981, at approximately 11:00 p.m. a security guard at Longhorne Motors heard the sound of glass breaking in the area of the garage. He then went to investigate, and as he approached that area he observed a person on the side of the building. At that time the automatic garage door started to open. The door could only be opened from inside the garage door and the garage itself had been locked for the evening.

When the guard approached the garage he noticed a Corvette parked inside the garage. The owner of Longhorne Motors testified that although the Corvette was kept outside during the daytime, it was locked up in the garage at night because of its value (approximately $10,000). The guard further observed a man, later identified as appellant, inside the garage, crouched behind the Corvette. The guard next entered the garage, announced he was armed and asked appellant to come out of the garage. Appellant then started to run and the guard fired five shots into the

1. 18 Pa.C.S. § 3502.

2. *Id.* § 3503(a)(1)(ii).

3. *Id.* § 903.

4. Act of April 28, 1887, P.L. 63, as amended, 61 P.S. §§ 483–486.

air. Appellant exited through a window in the rear of the building. The window was broken and the iron bars fronting it were separated.

Blood was discovered on the broken glass and on the outside front of the Corvette. When appellant was apprehended he had a deep laceration on his left forearm.

Dawn Landi, appellant's girlfriend, testified for the Commonwealth that she, appellant, and Edmund Gordon, a co-defendant,[5] were together on the night in question. The three had been out at a restaurant and were on their way back to Gordon's home in Levittown when Gordon told Landi, who was driving the car, to stop on a side road. Gordon stated that he wished to show appellant a car he wanted to buy (the Corvette). Gordon and appellant then left the vehicle while Landi remained behind in the car with the lights off and the engine running. About 5 or 10 minutes later Gordon returned to the car and told Landi to drive straight ahead. Landi did not see appellant again that evening.

Landi also stated that appellant had a sword in the car that evening. That sword was subsequently found outside the garage near the point of entry.

Appellant raises four issues on appeal: (1) was appellant denied a fair trial where the district attorney was permitted to ask, on voir dire, a question as to whether any potential jurors had ever been convicted of a felony or misdemeanor, (2) whether permitting the Commonwealth to amend the information at the close of the Commonwealth's presentation of its case was an abuse of discretion, (3) whether defense counsel was ineffective for eliciting the criminal conviction of defense witness Gordon on direct examination and whether the trial court abused its discretion in thereafter eliciting the nature of the conviction from the witness, and (4) whether the evidence concerning intent to commit a theft was sufficient.

5. Gordon was not tried jointly with appellant.

As to issues (1) and (4), we believe the trial court's opinion adequately addresses the merits of both and, after a review of the record, agree that these issues are without merit.

Appellant's second issue alleges that the trial court erred in permitting the Commonwealth to amend the information charging criminal trespass, section 3503(a)(1)(i), to charge section (a)(1)(ii), after presentation of their case-in-chief.[6]

The relevant statutory language sets forth:

**§ 3503.  Criminal trespass**

**(a) Buildings and occupied structures.—**

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:

(i) enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof;  or

(ii) breaks into any building or occupied structure or separately secured or occupied portion thereof.

(2) An offense under paragraph (1)(i) is a felony of the third degree, and an offense under paragraph (1)(ii) is a felony of the second degree.

Specifically, appellant argues that he was prejudiced by the amendment (1) because of his lack of notice of the prosecutor's intent to prosecute him for forcible entry, rather than surreptitious or deceptive entry, as originally charged and (2) because the amendment raised the grade of the crime from a third to a second degree felony, subjecting him to a more severe penalty.

Rule 229, Pa.R.Crim.P. states:

**Rule 229.  Amendment of Information**

The court may allow an information to be amended when there is a defect in form, the description of the offense, the description of any person or any property, or the date charged, provided the information as amended

---

**6.** There is no dispute among the parties nor the trial court as to the request for amendment at the close of the Commonwealth's case and the fact that appellant objected to the amendment.  We note our disapproval of the fact that the side bar conference where the amendment request, objection, and grant occurred was not recorded.

does not charge an additional or different offense. Upon amendment the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

As stated in *Commonwealth v. Stanley*, 265 Pa.Super. 194, 212, 401 A.2d 1166, 1175 (1979), *aff'd* 498 Pa. 326, 446 A.2d 583 (1982):

The purpose of Rule 229 is to insure that a defendant is fully appraised of the charges against him, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed. In effecting this purpose, the courts of this Commonwealth employ the test of whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted. (footnotes and citations omitted)

■■■ We find the instant facts similar to those in *Commonwealth v. Neal*, 274 Pa.Super. 225, 418 A.2d 378 (1980), where the indictment charged the defendant with robbery, 18 Pa.C.S. § 3701(a)(1)(iii) and where the trial judge subsequently charged the jury on robbery, Section 3701(a)(1)(ii). The elements of subsections (a)(1)(iii) and (a)(1)(ii) are different:

(1) A person is guilty of robbery if, in the course of committing a theft, he:

. . . .

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury; or

(iii) commits or threatens immediately to commit any felony of the first or second degree.

The Superior Court held that it was error to allow that amendment, as it involved a substantive change of the elements of the crime, to defendant's prejudice. We note also that for purposes of amending an information, a substantive amendment is one that changes the nature or grade of the offense charged. *Commonwealth v. Herstine,* 264 Pa.Super. 414, 399 A.2d 1118 (1979). Clearly, the grade of the offense in the instant case was changed, as were the elements required to prove guilt.

While we are aware that certain cases have held amendments proper where apparent substantive amendments were granted, we find those cases distinguishable. *See Commonwealth v. Jones,* 319 Pa.Super. 570, 466 A.2d 691 (1983) (change in grade of criminal mischief permissible; amendment made *prior to trial); Commonwealth v. Womack,* 307 Pa.Super. 396, 453 A.2d 642 (1982) (adding criminal charges to information permissible *on day of trial* where no showing of prejudice, no request for continuance and defendant held for court on said charge at preliminary hearing).

As we find the amendment in the instant case to have been improper, we vacate judgment of sentence and reverse the conviction for criminal trespass.

■ Appellant's third issue alleges ineffectiveness of counsel for eliciting from defense witness Gordon his criminal conviction on direct examination. Our examination of a claim of ineffectiveness of counsel involves a two-step analysis:

The Court must first determine whether the issue underlying the charge of ineffectiveness is of arguable merit. *Commonwealth v. Sherard,* 483 Pa. 183, 394 A.2d 971 (1978). If the underlying issue is found to be of arguable merit, our inquiry shifts to a determination of whether the course chosen by counsel had some reasonable basis aimed at promoting his client's interests.

*Commonwealth v. Evans,* 489 Pa. 85, 91, 413 A.2d 1025, 1028 (1980); *Commonwealth v. Sherard, supra.*

*Commonwealth v. Golson,* 310 Pa.Super. 532, 535, 456 A.2d 1063, 1065 (1983).

Appellant alleges that defense counsel was ineffective for eliciting the conviction of a defense witness. The record indicates that defense counsel, on direct examination of defense witness Gordon, asked him if he had been convicted of a crime, to which Gordon answered affirmatively. Defense counsel then stated that she had no further questions. A sidebar conference was then held out of the jury's presence, where it was determined that defense counsel did *not* know for a fact either that the witness had been convicted of a crime or the nature of the crime [7] and that the prosecutor had only a "rap sheet" on the witness, which did not indicate any dispositions. The court then questioned the witness as to the nature of the conviction over defense counsel's objection, which was determined to be burglary.

On subsequent cross-examination by the prosecutor before the jury, the witness revealed the nature of his conviction and the court immediately gave an instruction to the jury regarding the limited consideration to be given the conviction for purposes of impeachment. N.T. 180–1

A witness may be impeached by showing a prior conviction only if the crime involved dishonesty or false statement. *Commonwealth v. Burton,* 491 Pa. 13, 417 A.2d 611 (1980). Burglary is such a crime. *Commonwealth v. Clark,* 280 Pa.Super. 1, 421 A.2d 374 (1980), *aff'd,* 501 Pa. 393, 461 A.2d 794 (1983). On the other hand, acts not resulting in a conviction are not admissible to impeach a witness's credibility. *Commonwealth v. Burton, supra.* Although it was subsequently determined that the witness's conviction, as brought out on direct examination, was of the

7. In response to the court's question as to why defense counsel asked the question, if she did not know what the conviction was for, defense counsel stated that the defense witness was currently incarcerated. (N.T. 159).

type which could be used for impeachment purposes, our inquiry does not end there.

Appellant argues that defense counsel was ineffective because she did not know whether Gordon had been convicted of a crime, nor the nature of the crime, at the time of her question. Appellant further alleges that defense counsel was also informed *prior* to questioning Gordon, that the prosecutor had no proof of any conviction.

The record does not include the transcription of all side bar discussions on this matter. We do note that immediately prior to opening arguments at trial, the following transpired:

> MS. WEBSTER [Defense Counsel]: I would like to put on the record, if I may, I didn't bring forward a motion in limine. It was my understanding it wasn't necessary.
> THE COURT: I don't know what the status of this thing is. It is my understanding the Commonwealth does not plan to refer to a prior record.
> MR. REICHLEY [Prosecutor]: That's correct.

N.T. pp. 16–17.

It is unclear *whose* prior record is referred to by this dialogue, whether that of defense witness Gordon, appellant, or some other person. If the reference is to Gordon's prior record, then defense counsel, and the trial court, were on notice that the Commonwealth was not intending on using prior record to impeach.

The record also reveals that at the close of the Commonwealth's case-in-chief, the following exchange occurred at sidebar:

> MS. WEBSTER: Yes, I do have another motion. One of the witnesses that will testify that I have subpoenaed *I believe has a prior criminal record.* He will be a Defense witness. He is also the co-defendant in this case. I would move that the Commonwealth be prohibited to making any reference or asking any questions concerning his prior criminal record.
> THE COURT: On what authority?

MS. WEBSTER: That it would be highly prejudicial, Your Honor.

(Further argument off the record.)

THE COURT: It seems to me that the cases which protect the Defendant don't protect Defense witnesses. Therefore, the Defense witness, I will allow it if in fact it comports with what the law is.

(Further argument off the record.)

THE COURT: The Court has already ruled should the Defendant take the witness stand, he would be protected under Bighum and rules your argument has absolutely no merit at this point.

N.T. pp. 121–22 (emphasis added)

This exchange indicates that defense counsel may have been uncertain as to whether Gordon had a prior record. Also, defense counsel's authority for requesting that the prior record not be referred to by the Commonwealth (as being highly prejudicial) is clearly an inadequate basis, without more. If, during the off the record arguments, the prosecutor informed defense counsel that it had only a "rap sheet" with no dispositions, there would appear to be no reasonable basis for defense counsel eliciting the witness's prior conviction, knowing the prosecutor had no proof of a conviction. We note that in *Commonwealth v. Reese*, 475 Pa. 120, 379 A.2d 1312 (1977), it was held to be reversible error for the prosecutor to impeach defense witness on the basis of a prior arrest which did not lead to a conviction. *See also Commonwealth v. Brabham*, 268 Pa.Super. 35, 407 A.2d 424 (1979) (reversible error for prosecutor to impeach witness by evidence of guilty pleas when it was unclear whether defendant pled guilty to one or three charges).

As stated in *Commonwealth v. Zapata*, 455 Pa. 205, 208, 314 A.2d 299, 301 (1974): .

Even where its use is properly limited to impeaching credibility, the introduction of a defendant's criminal

record possesses a potential for severe prejudicial impact on a jury. Thus, there would rarely be a time when the introduction of such evidence would produce some result favorable to the defendant. Nevertheless, there may be situations where a defense attorney is substantially certain that the prosecution will utilize a defendant's prior convictions if he decides to testify. In those situations, it may be reasonable trial strategy for the defense counsel to bring those convictions out on direct examination in order to minimize their impact, thus muting the prosecution's thunder. Before doing so, however, counsel should be convinced that such evidence is available to the prosecution, *i.e.,* that the convictions would properly be admissible to impeach the defendant's credibility. In the absence of such certainty, counsel would be acting "ineffectively" if he introduced an aspect of his client's criminal record which was, in fact, not competent evidence. Thus, our present inquiry must focus on whether counsel for the appellant justifiably believed that the record of these convictions was admissible.

We believe the same considerations apply to defense *witnesses,* other than the accused. *See Commonwealth v. Pilosky,* 239 Pa.Super. 233, 362 A.2d 253 (1976) (applying rules regarding impeachment of defendants by use of convictions for crimes of dishonesty or false statements to defense *witnesses).*

Clearly, if defense counsel did not know for a fact whether Gordon had any prior criminal convictions for crimes which could be used to impeach his credibility *and* if defense counsel had been informed that the prosecutor had no such proof, questioning Gordon as to whether he had ever been convicted was error. In such circumstances, there could be no reasonable basis aimed at promoting her client's interests by impeaching Gordon by merely asking him whether he has ever been convicted of any crime, without eliciting the nature of the crime. This is especially true in

the instant case where Gordon was the only defense witness presenting substantive testimony.[8]

■ We also note that appellant's counsel on appeal is the same counsel as at trial. In such a situation, where ineffectiveness is alleged and said ineffectiveness cannot be conclusively determined from the record, a remand for appointment of new counsel and an evidentiary hearing is the proper procedure. *See Commonwealth v. Fox*, 476 Pa. 475, 383 A.2d 199 (1978); *Commonwealth v. Bossick*, 305 Pa.Super. 196, 451 A.2d 489 (1982). This is just such a case.

The conviction and judgment of sentence on the criminal trespass charge is vacated. We also vacate the remaining judgment of sentence and remand to the trial court for appointment of new counsel to appellant, other than from the public defender's office and for an evidentiary hearing. If it is determined that defense counsel was ineffective, a new trial shall be ordered. If counsel is determined not to have been ineffective, judgment of sentence shall be reinstated on all but the criminal trespass conviction.

Jurisdiction is not retained.

CIRILLO, J., filed a dissenting opinion.

CIRILLO, Judge, dissenting:

I respectfully dissent.

The Supreme Court of Pennsylvania in *Commonwealth v. Badger*, 482 Pa. 240, 244, 393 A.2d 642, 644 (1978) has formulated the test for determining effectiveness of counsel. The court stated that:

"... a finding of ineffectiveness [can] never be made unless [it can be] concluded that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized." *Commonwealth ex rel. Washington v. Maroney, supra*, 427 Pa. at 605, n. 8, 235 A.2d 353, n. 8 ... the alternatives must be examined

---

**8.** Appellant did not testify. The only other defense witnesses were investigators from the public defender's office.

only as a means of determining whether the course chosen had some reasonable basis.

Appellant has not shown that counsel's strategy was devoid of reason. Thus, further evidentiary proceedings are not mandated.